1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ACACIA CORPORATE
MANAGEMENT, LLC, MICHAEL
IOANE,

        Plaintiffs,

        v.

UNITED STATES OF AMERICA, et al.,

        Defendants.
_____

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

VINCENT STEVEN BOOTH, et al.,

        Defendants.
_____

STEVEN BOOTH, et al.,

        Plaintiffs,

        v.

ACACIA CORPORATE
MANAGEMENT, LLC., et al.,

        Defendants.
_____

AND RELATED COUNTERCLAIMS
_____

CASE NO. 1:07-CV-1129 AWI GSA

ORDER RE: MOTIONS TO JOIN
NECESSARY PARTIES

CASE NO. 1:09-CV-1689 AWI GSA

CASE NO. 1:12-CV-0171 AWI GSA

## I. History

This is three sided litigation: the United States, the Booths, and the Ioane Group dispute

1

ownership over the Subject Properties.  The United States initiated case is 09-1689.  The Booths

initiated case is 12-0171.  The Ioane Group initiated case is 07-1129.  The citation of documents

in the record refers to the docket in Civ. Case No. 09-1689.  This is the lead case that is expected

to reach trial first.

Vincent Steven and Louise Q. Booth ("Booths") are a married couple who file joint tax

returns.  Vincent Booth purchased 5705 Muirfield Drive, Bakersfield, CA ("Muirfield") in 1986;

the Booths purchased 5717 Roundup Way, Bakersfield, CA ("Roundup") in 1994; Vincent Booth

purchased 1927 21st Street, Bakersfield, CA ("21st Street") in October 1996 (collectively the

"Subject Properties").  The Booths set up three trusts, the Alpha Omega Trust ("Alpha Omega"),

Aligned Enterprises Trust ("Aligned"), and Agape Foundation ("Agape") in 1995.  The

beneficiaries of Alpha Omega and Aligned were the Booths' children and Agape.  The Booths

were trustees of Alpha Omega and Aligned from 1996 to July 2000.  The Booths transferred

ownership of Muirfield and Roundup to Alpha Omega in July 1996 through quitclaim deeds;

they transferred 21st Street to Aligned in 1996.  In the 1990s and 2000s, the Booths resided at

Roundup, Vincent Booth used 21st Street as his medical chiropractic office, and Vincent Booth's

mother resided at Muirfield.  The Booths may have paid rent to the various trusts and entities that

held formal title to the Subject Properties.

The Booths met Plaintiff Michael Scott Ioane ("Ioane") and began taking his advice on

how to reduce/evade their income tax liabilities.  In 1999, Defendant United States ("United

States") made tax assessments against the Booths for deficiencies in the tax years 1995-1997.

The United States filed a tax lien in Kern County against the Booths ("2000 Tax Lien").  On

December 22, 2005, the United States filed a tax lien on the Subject Properties specifically

("2005 Tax Lien").

Meanwhile the parties dispute what happened to the Subject Properties.  Ioane established

Acacia Corporate Management, LLC ("Acacia"), Mariposa Holding, LLC ("Mariposa"), and

Alpha Enterprise LLC ("Alpha Enterprise").  These four parties (collectively the "Ioane Group")

share the same interests and are all represented by the same attorney, William McPike.  Some

combination of the Booths, Alpha Omega, Aligned, and Ioane Group established the Bakersfield

Properties & Trust Co. ("BPT") and Southern Financial Trust ("Southern").  Alpha Omega and Aligned executed a deed of trust, encumbering the Subject Properties with a loan obligations owing to Southern and then transferred the Subject Properties to BPT in 2000.  BPT transferred the Subject Properties to Acacia and Ioane on December 5, 2005.  The obligations to Southern was assigned to Treble LLC ("Treble") who assigned them to Mariposa.  The United States alleges that all of the transfers and assignments were for little or no consideration.

On April 9, 2009, a grand jury in Sacramento indicted the Booths and Ioane on various criminal charges related to tax evasion (Criminal Case No. 09-0142).  The Booths reached a plea bargain with the United States: Vincent Booth plead guilty to one count of conspiracy to defraud the United States, all other charges against him and Louise Booth were dismissed.  The Booths cooperated with the United States's criminal prosecution of Ioane; Vincent Booth testified against Ioane at his trial.  On October 3, 2011, a jury found Ioane guilty of conspiracy to defraud the United States and presenting fictitious obligations intended to defraud.  Ioane has appealed, but the Ninth Circuit has affirmed the conviction.

Presently, in Civ. Case No. 09-1689, the United States is suing the Booths, Ioane, Acacia, Mariposa, Alpha Enterprise, and California's Franchise Tax Board ("FTB") to foreclose on the Subject Properties and to have the transfers and deeds of trust to be set aside or avoided as fraudulent.  The FTB may have state tax liens against the Booths that may burden the Subject Properties.  The Ioane Group has made a motion to join necessary parties arguing that various intermediate entities that had title or interest in the Subject Properties are necessary parties. Doc. 138.  The United States filed an opposition. Doc. 141.  The court reviewed the filings and determined that additional briefing was needed. Doc. 147.  The Ioane Group filed a supplement and replies. Docs. 146, 152, and 153.  The United States and the Booths filed oppositions. Docs. 149 and 150.  The Ioane Group has made parallel motion to join necessary parties in the other two civil cases; this order addresses all three motions.  A hearing on this matter was held on June 10, 2013.

## II. Legal Standards

Under Fed. Rule Civ. Proc. 12(b)(7), a party may raise the defense of "failure to join a

3

1    party under Rule 19."  A court can dismiss an action if it determines that an absent party is

2    necessary to the action, can not be joined, and is indispensable.  <u>Confederated Tribes v. Lujan</u>,

3    928 F.2d 1496, 1498 (9th Cir.1991).  If an absent party is necessary and can be joined, "the court

4    must order that the person be made a party." Fed. Rule Civ. Proc. 19(a)(2).  In general, Rule 19

5    contains two sections which set out standards for determining which parties are necessary

6    (section a) and indispensable (section b):

7           Applying these two parts of Rule 19, there are three successive inquiries. First, the court
            must determine whether a nonparty should be joined under Rule 19(a). We and other
8           courts use the term 'necessary' to describe those persons to be joined if feasible. If
            understood in its ordinary sense, 'necessary' is too strong a word, for it is still possible
9           under Rule 19(b) for the case to proceed without the joinder of the so-called 'necessary'
            absentee. In fact, Rule 19(a) defines the persons whose joinder in the action is desirable in
10          the interests of just adjudication. Absentees whom it is desirable to join under Rule 19(a)
            are persons having an interest in the controversy, and who ought to be made parties, in
11          order that the court may act.

12          If an absentee is a necessary party under Rule 19(a), the second stage is for the court to
            determine whether it is feasible to order that the absentee be joined. Rule 19(a) sets forth
13          three circumstances in which joinder is not feasible: when venue is improper, when the
            absentee is not subject to personal jurisdiction, and when joinder would destroy subject
14          matter jurisdiction.

15          Finally, if joinder is not feasible, the court must determine at the third stage whether the
            case can proceed without the absentee, or whether the absentee is an 'indispensable party'
16          such that the action must be dismissed. As the Advisory Committee Note explains, Rule
            19 uses the word 'indispensable' only in a conclusory sense, that is, a person is regarded
17          as indispensable when he cannot be made a party and, upon consideration of the factors in
            Rule 19(b), it is determined that in his absence it would be preferable to dismiss the
18          action, rather than to retain it. Indispensable parties under Rule 19(b) are persons who not
            only have an interest in the controversy, but an interest of such a nature that a final decree
19          cannot be made without either affecting that interest, or leaving the controversy in such a
            condition that its final termination may be wholly inconsistent with equity and good
20          conscience.

21   <u>EEOC v. Peabody W. Coal Co.</u>, 400 F.3d 774, 779-80 (9th Cir. 2005).  Courts must analyze the

22   three steps in order as the determination of whether a party is required in Rule 19(a) is "the

23   threshold requirement[]." <u>Temple v. Synthes Corp.</u>, 498 U.S. 5, 8 (1990).  The moving party has

24   the burden of persuasion in arguing for dismissal. <u>Makah Indian Tribe v. Verity</u>, 910 F.2d 555,

25   558 (9th Cir.1990).  "The proponent's burden can be satisfied by providing affidavits of persons

26   having knowledge of these interests as well as other relevant extra-pleading evidence." <u>Citizen</u>

27   <u>Band Potawatomi Indian Tribe v. Collier</u>, 17 F.3d 1292, 1293 (10th Cir. 1994), citations omitted.

28

### III. Discussion

The Ioane Group first asserts that BPT and Southern must be joined as necessary parties. Doc. 138, Ioane Group Motion, 2:6-10.  After the court ordered additional briefing and a firm statement as to which parties were necessary, the Ioane Group stated that BPT, Southern, Alpha Omega, and Aligned (together with their beneficiaries and certificate holders), Treble, and Bob Bell (Treble's attorney) all had to be joined. See Doc. 146, Ioane Group Supplement, 3:6-5-13.

### A. Proper Representative of Trusts

The parties dispute who has the authority to represent interests related to a trust.  The trust itself is not the proper party.  Under California law, "as a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf." Estate of Giraldin, 55 Cal. 4th 1058, 1075 (Cal. 2012), citing Estate of Bowles, 169 Cal. App. 4th 684, 691 (Cal. App. 2d Dist. 2008).  "The trustee has the power to prosecute or defend actions, claims, or proceedings for the protection of trust property and of the trustee in the performance of the trustee's duties." Cal. Prob. Code § 16249.  Further, beneficiaries are "not indispensable parties under California trust law." United States v. Dubey, 473 Fed. Appx. 691, 691 (9th Cir. 2012), citing Estate of Kessler, 32 Cal. 2d 367, 369 (Cal. 1948).  The court thus interprets the Ioane Group's argument to be that the trustees of the various trusts discussed must be joined as necessary parties.

### B. Rule 19(a)(1)

"A party may be necessary under Rule 19(a) in three different ways. First, a person is necessary if, in his absence, the court cannot accord complete relief among existing parties. See Fed. R. Civ. P. 19(a)(1)(A). Second, a person is necessary if he has an interest in the action and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest. See Fed. R. Civ. P. 19(a)(1)(B)(i). Third, a person is necessary if he has an interest in the action and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest. See Fed. R. Civ. P. 19(a)(1)(B)(ii)." Salt River Project Agric. Improvement & Power Dist. v. Lee, 2012 U.S. App. LEXIS 10862, *8-9

1   (9th Cir. Ariz. May 29, 2012).  In this case, there is no dispute that the first test does not apply.

2   Instead, the court must analyze the second and third tests: a party is necessary if "(B) that person

3   claims an interest relating to the subject of the action and is so situated that disposing of the

4   action in the person's absence may: (i) as a practical matter impair or impede the person's ability

5   to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring

6   double, multiple, or otherwise inconsistent obligations because of the interest." Fed. Rule Civ.

7   Proc. 19(a)(1)(B).

8        The United States points out both of these tests are "contingent, however, upon an initial

9   requirement that the absent party claim a legally protected interest relating to the subject matter

10  of the action." Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1043 (9th Cir.

11  1983).  The United States argues as a general matter of law that when property is transferred

12  through multiple entities, intermediate transferees are not considered required parties under Rule

13  19(a). Doc. 150, United States Supplemental Opposition, 6:2-17.  The weight of the case law

14  supports this general statement.  "[A] third person through whom a fraudulent conveyance

15  passes, who does not participate in the fraud is not a necessary party to a fraudulent conveyance

16  action." Damazo v. Wahby, 269 Md. 252, 255 (Md. 1973).[1]  "[T]he person through whom a

17  fraudulent conveyance passed and who acted merely to promote the scheme to defraud creditors,

18  has no legal or equitable interest in the property fraudulently conveyed, and is not a necessary

19  party to a proceeding to set aside the conveyance." Cable v. Cable, 132 W. Va. 620, 634 (W. Va.

20  1949); see also Sheepscot Land Corp. v. Gregory, 383 A.2d 16, 24 (Me. 1978); Asset Sec. Corp.

21  v. Asset Base Resources, 252 B.R. 840, 843 (Bankr. S.D. Fla. 2000).  "The plaintiff contends that

22  these entities have no interest, although they appear in the chain of title to one or more parcels.

23  Based upon what is before the court, it appears improbable that these three trusts have or claim

24  any interest in the property which is the subject of this litigation. They are not, therefore,

25  _____

26       [1]State courts apply state standards of necessary joinder.  However, their rulings are still

27  relevant as, in general, "the State rule mirrors, in many respects, the federal rule." Serv. Transp.,
    Inc. v. Hurricane Express, Inc., 185 Md. App. 25, 35 (Md. Ct. Spec. App. 2009).

28

1    necessary parties." U.S. v. Rempel, 2001 WL 650345, *1 (D.Alaska April 12, 2001).

2        However, an important caveat is the requirement that the intermediate entity no longer

3    hold any interest in the transferred property.  The Hawaii Supreme Court suggests that

4    intermediate entities arere still required parties in some circumstances: "where a creditor alleges

5    a fraudulent transfer of property from a judgment debtor to a transferee who retains title to the

6    subject property or who claims an interest in the property or its proceeds, the transferee is a

7    necessary party to any action seeking to set aside the transfer....Although the petitioners sold the

8    property by way of agreement of sale to Hakim Properties, they remain the titleholders of the

9    property until the payments under the agreement of sale are completed in 1995. The petitioners

10   also have a claim to the monthly proceeds from the sale of the property." Tanaka v. Nagata, 868

11   P.2d 450, 455 (Haw. 1994).  That is, an intermediate entity is necessary when it retains some

12   kind of tangible monetary or property interest.  This caveat is in accord with other courts' general

13   holdings on the issue of necessary joinder in fraudulent conveyance cases. See Liuzza v. Bell, 40

14   Cal. App. 2d 417, 424 (Cal. App. 1st Dist. 1940) ("In California, while there must be a defendant

15   competent to defend, and one against whom a judgment may be rendered, in the matter of a

16   fraudulent conveyance the grantee or his representative must be a party at the time of the

17   rendition of the judgment, but the fraudulent grantor who has reserved no interest, legal or

18   equitable, although a proper, is not a necessary, party to the action to set it aside"); United States

19   v. Mazzeo, 2001 U.S. Dist. LEXIS 1698, *14 (E.D.N.Y. Jan. 10, 2001) ("[T]he only necessary

20   parties to a fraudulent conveyance action are the transferee and any other party who may claim an

21   interest in the property conveyed").  The Ninth Circuit has stated, "Rule 19(a)(2) does not require

22   a property right; it requires an 'interest' that will be impaired by the litigation as a practical

23   matter. We have held that the interest must be a legally protected one, but we have not required

24   that the interest be property in the sense of the due process clause." Am. Greyhound Racing, Inc.

25   v. Hull, 305 F.3d 1015, 1023 (9th Cir. 2002).

26       Relevant to the case at hand, where an intermediate entity's interest is monetary and

27   related to a note on real property, it is a required party to a case seeking to avoid transfers based

28   on a fraudulent conveyance theory. Cf. Dearborn St. Bldg. Assocs., LLC v. Huntington Nat'l

7

1  Bank, 411 Fed. Appx. 847, 851 (6th Cir. 2011) (in finding Huntington is not a necessary party,

2  court said "Dearborn has also failed to show how avoidance would impair or otherwise affect

3  Huntington's interests; indeed, at oral argument, Dearborn conceded that avoiding the

4  Remembrance Road transaction would not extinguish Huntington's mortgage, and that any

5  property interest Dearborn gained would remain subject to Huntington's mortgage").  A party "is

6  a necessary party to...the quiet title action, inasmuch as he remains liable on the promissory note

7  encumbering the property." Weaver v. Mid-Century Ins. Co., 690 F. Supp. 845, 846 (E.D. Mo.

8  1988).

9          Interests and potential claims that may arise as a consequence of the case are considered

10 too attenuated and speculative to implicate Rule 19(a).  Courts properly focus on the controversy

11 and claims at hand. See Crowthers McCall Pattern, Inc. v. Lewis, 129 B.R. 992, 1003 (S.D.N.Y.

12 1991) ("defendants' assertion that the decision here might have a precedential impact on the

13 absent persons is based on speculation. Only Crowthers Pattern [plaintiff] can assert fraudulent

14 conveyance claims against the absent parties and Crowthers Pattern has not done so").  The

15 Second Circuit, in finding that the contract in question would necessarily force a party in the case

16 to breach another contract with a third party, has explained that "a critical element in Rule

17 19(a)(2)(ii): the substantial risk of inconsistent obligations must be caused by the non-party's

18 absence in the case. FIFA's risk of multiple obligations to different parties is not a result of

19 Visa's absence in this lawsuit; it is the result of FIFA allegedly breaching its contract with

20 MasterCard and awarding Visa sponsorship rights it was contractually prohibited from granting.

21 Visa's presence in this lawsuit will not remedy that fact. Whether Visa is or is not a party in the

22 underlying lawsuit, FIFA and Visa will litigate their dispute under their contract later on down

23 the road if MasterCard prevails here." Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d

24 377, 388 (2nd Cir. 2006).  Similarly, another court found, "The fact that Williams may have

25 executed a warranty deed and thereby become liable to his grantee for breach of warranty if

26 plaintiffs succeed, as suggested by plaintiffs, does not change the situation. Plaintiffs are not

27 interested in whether any defendant has a cause of action against any other. Rather they are

28 endeavoring to establish title to property now claimed entirely by defendants other than

**8**

1  Williams. His presence is wholly unnecessary; it can add nothing to plaintiffs' claim and is of no

2  avail in the establishment of that claim." <u>Ford v. Adkins</u>, 39 F. Supp. 472, 474 (E.D. Ill. 1941).

3        There is some limited countervailing case authority that argues for a general rule that all

4  intermediate entities are required parties based on secondary disputes that may arise.  The District

5  of Connecticut found that a painting's earlier owner, Corneroli, was a necessary party though he

6  had no current interest in the painting: "declaratory judgment counts essentially seek to quiet title

7  to the paintings; the estate seeks a judgment that it owns the paintings free and clear of any claim

8  to ownership by their current possessors or the galleries that formerly sold them. Under both Rule

9  19(a)(1) and Rule 19(a)(2)(ii), Corneroli is a necessary party to these claims. In his absence

10  'complete relief cannot be accorded among those already parties,' because a declaratory

11  judgment that did not bind him would not truly quiet title to the paintings. Corneroli surely

12  claims that he legitimately owned the paintings and properly sold them to the galleries....In

13  addition, the [later owners] would be 'subject to a substantial risk of incurring double, multiple,

14  or otherwise inconsistent obligations' in Corneroli's absence because they could lose this

15  declaratory judgment claim and also lose a similar claim to Corneroli, who would not be bound

16  by any decision in this case." <u>D'Amico v. Doe</u>, 2005 U.S. Dist. LEXIS 769, *10-11 (D. Conn.

17  Jan. 20, 2005); see also <u>Omni Equities v. Pearl S. Buck Found.</u>, 850 F. Supp. 290, 294 n.4 (E.D.

18  Pa. 1994) (in case where property was conveyed through multiple entities, a party that had held a

19  mortgage that was paid off was deemed necessary; no analysis and no objection to motion).

20  However, these opinions appear to be anomalous given the weight of case law that comes to the

21  opposite conclusion.  The court declines to adopt this minority view.

22        The burden is firmly on the party making the motion to show that a party is necessary.  In

23  a case where the evidence was not altogether clear whether the third party might be a tenant or

24  owner of trust certificates, the court found that joinder was not necessary: "While the record does

25  suggest that Laura Scherping may have some interest in the fraudulent conveyance claims, those

26  claims do not directly affect her. Plaintiff seeks to set aside the conveyances as fraudulent so that

27  it may enforce liens that have attached to defendants' property; plaintiff does not seek damages

28  against Laura Scherping or claim a right to foreclose on property owned by her." <u>United States v.</u>

1   <u>Scherping</u>, 1992 U.S. Dist. LEXIS 8954*9-10 (D. Minn. 1992).

2        The evidence the Ioane Group has presented is fragmentary.  There is a significant

3   volume of documentation concerning the existence and status of various trusts, but little that

4   shows how they are connected to the Subject Properties at the present time.  Of note, the Ioane

5   Group does provide evidence that a number of transactions involving the Subject Properties took

6   place in 2000.  In January 2000, Alpha Omega executed a "Deed of Trust and Assignment of

7   Rents" on Roundup in favor of World Title Co. ("World Title") as trustee and Southern as

8   beneficiary. Doc. 146, Part 2, 34-45 of 45.  In March 2000, Aligned executed a "Deed of Trust

9   and Assignment of Rents" on 21st Street in favor of World Title Co. ("World Title") as trustee

10  and Southern as beneficiary. Doc. 146, Part 2, 20-25 of 45.  In March 2000, Alpha Omega

11  executed a "Deed of Trust and Assignment of Rents" on Muirfield in favor of World Title as

12  trustee and Southern as beneficiary. Doc. 146, Part 2, 26-33 of 45.  Each of these three "deeds of

13  trust and assignment of rents" was "for the purpose of securing 1. Payment of the indebtedness in

14  the principal sum of $500,000, evidenced by that certain promissory note of even date herewith

15  made by Trustor, or any of them, payable to Beneficiary on order."  Soon after, Alpha Omega

16  and Aligned appear to have transferred the Subject Properties to BPT.  In August 2000, Aligned

17  executed a "Grant Deed," transferring 21st Street to BPT in exchange for "Fifty dollars U.S.A.

18  Silver and other Valuable Consideration" though the paperwork was not recorded. Doc. 146, Part

19  1, 20-25 of 66.  In August 2000, Alpha Omega executed a "Grant Deed," transferring Muirfield

20  and Roundup to BPT in exchange for "Fifty dollars U.S.A. Silver and other Valuable

21  Consideration" though the paperwork was not recorded until January 2002. Doc. 146, Part 1, 27-

22  44 of 66.

23        These documents, while useful to trace through the history of the Subject Properties, do

24  not show that Alpha Omega, Aligned, Southern, or BPT still have an interest in the Subject

25  Properties.  The Ioane Group fails to provide sufficient evidence to show that any other parties

26  hold any interest related to the Subject Properties.  The most complete explanation of the events

27  relevant to this case comes from the Ioane Group's pretrial statement; the court relies on that

28  document solely for explanation and not as evidence.  Regarding title, Alpha Omega and Aligned

1  transferred the Subject Properties to BPT in 2000.  BPT then transferred them to Acacia in 2005.

2  Doc. 139, Ioane Group Pretrial Statement, 11:7-12.  As for deeds of trust/mortgage debt, the

3  current obligors and obligees are already parties to this case.  On the lender side, the "deed of

4  trust and assignment of rent" purported to burdened each Subject Property with a $500,000 debt

5  owing to Southern.  The Ioane Group represents that these three debts were reconfigured into a

6  single $900,000 debt to Southern, secured by the Subject Properties. Doc. 139, Ioane Group

7  Pretrial Statement, 9:13-10:9.  Southern then assigned the debt to Treble who in turn assigned it

8  to Mariposa. Doc. 139, Ioane Group Pretrial Statement, 10:10-21.  On the payer side, BPT

9  assumed the $500,000 debts when it acquired the Subject Properties from Alpha Omega and

10  Aligned.  With the reconfiguration, BPT was obliged to pay Southern $900,000.  As part of the

11  transfer of the Subject Properties to Acacia in 2005, Acacia assumed the obligation to pay

12  Southern $900,000. Doc. 139, Ioane Group Pretrial Statement, 11:7-23.  As discussed above, that

13  obligation was ultimately assigned to Mariposa.  At the hearing, Ioane was allowed to address the

14  motion and he asserted that, in connection with the Subject Properties, Mariposa owed money to

15  Southern.  The United States disputed Ioane's characterization of the facts.  Ioane's verbal

16  assertion also seems to be at odds with the content of Ioane Group's pretrial statement.  Again,

17  the Ioane Group fails to present sufficient evidence to support this motion.  From what can be

18  gathered, the debt that is secured by the Subject Properties is currently owed by Acacia to

19  Mariposa, existing parties to this case.  There is no evidence that the Subject Properties are

20  burdened with any operative trust certificates.  Neither BPT nor Southern (nor any other party)

21  owes or is owed any money that is tied to a deed of trust on the Subject Properties.  The Ioane

22  Group has not demonstrated that anyone aside from the existing parties has any interest at the

23  present time (either title, mortgage, or rental income) from the Subject Properties.

24       In an alternative approach, the Ninth Circuit has also found that,

25  If a legally protected interest exists, the court must further determine whether that interest
26  will be impaired or impeded by the suit. Impairment may be minimized if the absent party
   is adequately represented in the suit....In assessing an absent party's necessity under Fed.
   R. Civ. P. 19(a), the question whether that party is adequately represented parallels the
27  question whether a party's interests are so inadequately represented by existing parties as
   to permit intervention of right under Fed. R. Civ. P. 24(a). Consequently, we will
28  consider three factors in determining whether existing parties adequately represent the

interests of the absent tribes: whether 'the interests of a present party to the suit are such that it will undoubtedly make all' of the absent party's arguments; whether the party is 'capable of and willing to make such arguments'; and whether the absent party would 'offer any necessary element to the proceedings' that the present parties would neglect.

Shermoen v. United States, 982 F.2d 1312, 1318 (9th Cir. 1992), citing County of Fresno v. Andrus, 622 F.2d 436, 439 (9th Cir. 1980).  In a case from the District of Oregon, the plaintiffs created and funded an intermediate entity to purchase stock from defendant.  The sale fell through, but the intermediate entity had already advanced funds to defendant.  The plaintiffs sued defendant, seeking return of funds; the intermediate entity was not a party in the case.  The court found that the plaintiffs could adequately represent the intermediate entity as their interests were identical and plaintiffs were able to make all appropriate arguments. U.S.A. Fund, LLLP v. Wealthbridge Mortg. Corp., 2011 U.S. Dist. LEXIS 88399, *9-10 (D. Or. Aug. 9, 2011); see also Altmann v. Republic of Austria, 142 F. Supp. 2d 1187, 1212 (C.D. Cal. 2001) (plaintiff heir procured assignment of co-heirs' claims on disputed paintings expropriated during World War II; the other heirs were found not to be necessary parties as the plaintiff could adequately represent their interests).  In this case, the Ioane Group and the intermediate entities are all seeking to assert the validity of the series of transfers.  Their interests are identical as they seek to preserve the formal chain of title to the Subject Properties and nothing else. Cf. In re Oceana International, Inc., 49 F.R.D. 329, 332 (S.D.N.Y. 1970) (intervention granted as the parties had different interests: party to the suit defending against claim for money damages while third party may have to defend the title to property).  There is every indication that the Ioane Group will be able to raise all arguments that the intermediate entities might make.


### IV. Order

The Ioane Group's motion to join necessary parties is DENIED.

IT IS SO ORDERED.

Dated:    June 11, 2013                          _____
                                                SENIOR  DISTRICT  JUDGE